The Chancellor.
This is a bill for the foreclosure of a mortgage given by th¿ defendant, Boyles, to the complainant. The making of the mortgage is admitted, but it is alleged that it was given for a part of the consideration money, on a farm purchased of the complainant, which, upon a survey and estimate of the land, falls short of the number of acres for which it was sold ; and the defendant claims an abatement for such deficiency.
The article of agreement on which the sale took place, was dated the first of November, eighteen hundred and thirty-seven, and by it, the complainant and one Jane Negus, who were the-owners of the property, agreed, for the consideration of five-thousand and five hundred dollars, to convey to the defendant,. Boyles, on or before the first of April thereafter, a farm on which the parties then resided, in the township of Newton, in the county of Sussex, “said to contain one hundred and thirty-five-acres, be the same more or less.” The deed was made out for the property and bears date the twenty-ninth of March, eighteen hundred and thirty-eight, but was not delivered until the fifth of November, eighteen hundred and thirty-eight, at which time the defendant, Boyles, accepted the deed and went into possession. Two thousand dollars was paid or otherwise satisfactorily arranged with the complainant, and. the balance, being three thousand and five hundred dollars, was secured by the mortgage on which this suit is brought, upon the property purchased. The deed has a full description of the premises by courses and distances, and as to quantity of land, uses this language; ‘ containing, after excepting out of the foregoing survey, a certain lot of thirty-seven hundreds or an acre, used for the pur *215 poses of a grave-yard, and heretofore conveyed for that purpose, one hundred and thirty-five acres, be the same more oi less.”
By the evidence of Charles Rhodes, a surveyor, it seems the complainant, on the day of the date of the deed, employed him to run out the land, which he did, and drew the deed from his survey. At this time the surveyor did not made a calculation of the quantity of land in the survey, but told the complainant he did sot think it would hold out. The complainant directed him to put in the quantity at one hundred and thirty-five acres, but desired him to make a calculation for his satisfaction. This he did in June following, which was before the deed was delivered, and found it to contain but one hundred acres and eighty-five hundredths. He informed complainant how his estimate turned out, who said, he must have made a mistake; he said he thought not as he had been over it twice. The surveyor then went over the calculation a third time; and told the complainant there was no mistake in it, and when he so informed complainant, he desired him to say nothing about it. The complainant has since the delivery of the deed, caused the Land to be run out by Grant Fitch, and a calculation of the quantity to be made by him, and the result is, that he makes it to contain one hundred and twelve acres and forty-three hundredths. Thus it seems, by the estimate of Mr. Rhodes, there is a deficiency of rising thirty-four acres, and by that of Mr. Fitch, of rising twenty-two acres.
Two questions are made upon these facts ; whether the defendant, Boyles, under this contract and deed, is entitled to have any abatement or compensation for the deficiency in the quantity of the land; and if so, whether he can have it in this action.
Upon the first question, it is quite evident it was in the contemplation of these parties at the time, that the quantity of land sold was one hundred and thirty-five acres; both the contract and the deed call for that number of acres, and it is reason, able to suppose that before the survey of Mr. Rhodes, they *216 thought that very near, if not exactly, the amount of land. The books are full of cases on this subject, for it is a difficulty that has often arisen and created much discussion. It is evident, too, that different views have been taken of it in different courts. The plain and sensible rule, as it appears to me, is this; when land is sold as containing so many acres “more or less,” if the quantity on an actual survey and estimation, either overrunning or falling short of the contents named besmall, no compensation should be recovered by either party. The words more or less must be intended to meet such a result. But if the variance be considerable, the party sustaining the loss should be allow’ed for it. And this rule should prevail where it arises from mistake only, without fraud or deception. The case of Hill v. Buckley, 17 Vesey, 401, decided by sir William Grant, master of the rolls, is very much in point and settles the question in a satisfactory manner. That was a bill for a specific performance ; the quantity of land was represented to be two hundred and seventeen acres and ten perches. It turned out to be about twenty-six acres less and the party had an abatement pro tanto. In this case too, there was no evidence of any intended deception ; and the rule is stated to apply generally, although the land is not bought or sold professedly by the acre; the presumption being, that in fixing the price, regard was held to the quantity. If the purchaser know the true quantity at the time of his purchase, or there are words used clearly indicating the intention of both parties not to be governed in the sale by the amount of land, the purchaser will not be entitled to any relief. I refer upon this subject to 6 Vesey, jun. 328; 1 Vesey and Beames, 377; and to Sugden on Vendors, 218, and the note containing a reference to the American cases. Nor do I think it a sufficient objection to allowing an abatement of the price, that the contract has been executed. It is true, the cases cited refer to contracts remaining in fieri, but the principle is the same whether the contract only be executed or has been consumated by giving the deed; the inj ury is the same which the party sustains in the one case as the other; the mode of redress, and in *217 deed the power of the court over the case, may be very differ ent. Whether a court of equity will entertain jurisdiction foi the sole purpose of giving compensation or damages to a complainant, for any deficiency in the quantity of land conveyed after a conveyance actually made, is a very different question from making such allowance to a party who comes into court and asks a specific performance of an unexecuted agreement. If the case be once properly before the court, it will do all in its power to settle the rights of all the parties in the matter in controversy, justly and equitably, by one decree.
Under this agreement and deed, therefore, I deem the defendant equitably entitled to an abatement for the dificiency in the number of acres, upon the supposition that it was a mistake only, and without knowledge to the contrary by either of the parties, at the time of the contract. It cannot.be supposed that it was believed by either party that the deficiency as shown by either surveyor, was so large, or it would have affected the terms of the contract. The defendant, by his answer, distinctly declares he never would have paid the price he did, had he known the true quantity of land. The variance is too large to be passed by; taking a medium quantity between the two estimates, and it will leave a deficiency of nearly thirty acres on the purchase of one hundred and thirty-five acres. The fact that Mr. Boyles lived a neighbor and saw the land daily, can have no bearing on the question, nor can the doctrine of caveai em/ptor have any application. A purchaser relies, and has a right to rely upon the vendor for the number of acres, and may and usually does place implicit confidence in his statements.
But there is a farther view of this case, which places the defendant’s equity on a still firmer ground. While it is manifest that he was ignorant, except from the complainant’s representations, of the quantity of land in the farm, the evidence shows that before thebargain was consummated by the delivery of the deed, the complainant knew all about it; his own surveyor, after going over the calculation three times, told him how much *218 land there was, and the complainant desired him to say nothing about it. There are several other occasions stated in the evidence, of complainant’s referring to this subject, and desiring that it might not be mentioned, and even boasting that Boyles had not got the land as cheap as people thought, on account of its falling short in the quantity. He even went so far as to excuse himself for not having mentioned it to the defendant at tire-time of the sale, because he wished to get a Mr. Aber in as security for the money, who was rich and could stand it. When this deficiency was discovered by the complainant, he was: bound upon every principle of common justice to make it known to the defendant, and to go forward with the knowledge-he then possessed, with a deed for one hundred and thirty-five-acres and present it to the defendant, keeping him in the dark respecting it, was a palpable fraud.
Upon the remaining question, as to the power of the court, in-granting this abatement to the defendant in the present action,. I can see no serious difficulty. In a variety of cases, upon a bill for a specific performance, the court have directed a reference to a master to make the deduction, and why cannot the-same course be adopted here? In the case of * Coster v. The Monroe Manufacturing Company, in this court, on a bill to-foreclose a mortgage, where it appeared that the defendant had been ejected at law from a part of the premises covered by the-mortgage, and for which purchase the mortgage had been given ; to prevent circuity of actions, a reference to a master was. made to ascertain the damages sustained by the defendant, by the title so proving defective to a part of the lands, with a view of deducting it from the amount claimed by the complainant on his mortgage. This case is, in my view of it, still easier to be reached, and fully within the power of the court. It is suggested by the complainant’s counsel, that if the court grant any relief, it should be by first directing the farm to be sold and see-whether it will not, even at the reduced quantity, bring the-price at which it was sold to Boyles. There would be mani *219 fest injustice in this course; prices of land may have varied very much, the defendant may have improved the farm, and besides he is entitled to have the land. Chief justice Spencer,, sitting in the court of appeals, in 9 John. Rep. 465, takes an important distinction between the case of a vendor and that of a vendee, coming into equity for a specific performance. If the vendor cannot perform the contract entire, the vendee will not. be compelled in equity to perform it pro tanto, but the vendee, if he cannot obtained the whole, will be entitled, if he desires it,, to a performance of the contract for so much as the vendor may be able to give. If, therefore, the complainant could not convey the whole number of acres, the defendant, on this principle, is entitled to have a conveyance for as much as he is able to convey. I will not say, that cases may not arise in which it might be proper to rescind the entire contract, but this does not strike me as one, if such a question was properly under consideration, and more especially, as it appears the defendant upon learning the true situation of things, offered the complainant to rescind the entire contract, which he refused to do, and I now think he-has waived any right which he might otherwise have had to the adoption of that course.
Let the case be referred to a master, to ascertain and report the amount due the complainant on his bond and mortgage, and to become due thereon, after making to the defendant, Boyles, a a rateable abatement in the price of the land between one hundred and thirty-five acres, and the number of acres actually covered by the survey; * the true number of acres to be ascertained by the master, from the evidence already taken in the cause, and by causing such further survey and estimate to be made, as may be necessary to a safe result; and that he take the evidence of such further survey and estimate and return it with his report. Also, that he further report the amount due on the defendant Aber’s mortgage, and to become due thereon; and whether the property be so circumstanced as that a sale of part can be made, to satisfy the amount due, without prejudice, &o.
Cited in Glenn’s Ad. v. Whipple. 1 Beas. 51; Meart v. Rose, 1 C. E. Gr. 298; Nat. Iron Armor Co. v. Bruner, 4 C. E. Gr. 336; White v. Stretch, 7 C. E. Gr.

Aíite, vol. i. page 467.

 See letter.